UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO TORRES,<br><br>                    Plaintiff,<br><br>          v.<br><br>MIKE HANSEN, et al.,<br><br>                    Defendants. | Case No.  17-cv-06587-SI<br><br>**ORDER OF SERVICE**<br><br>Re: Dkt. No. 1 |

Mario Torres, a California inmate, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His pleading is now before the court for review pursuant to 28 U.S.C. § 1915A.

## BACKGROUND

A.     Procedural History

Torres filed a civil rights action asserting claims against numerous defendants for alleged misdeeds during his arrest and in connection with criminal cases filed against him.  *See Torres v. Saba*, No. 16-cv-6607 SI.  His third amended complaint in that action had two segments: claims about his arrest on July 4, 2012, and claims about Torres' first trial for an assault he committed four months later.  In Case No. 16-cv-6607 SI, the court determined that the claims against the defendants in the second segment were not properly joined with the claims against the defendants in the first segment of the third amended complaint and severed them.  *See* Docket No. 21 in Case No. 16-cv-6607 SI.  The court explained:

> The claims against the Concord Police Department and its members arising out of events and omissions on July 4, 2012 will proceed in [Case No. 16-cv-6607 SI]. All other claims and defendants will be severed because they are not properly joined with the foregoing claims.  That is, the claims and requests for relief alleged at pages 15-45 of the third amended complaint will be severed and filed as a new action [i.e., Case No. 17-cv-6587 SI], where they will be addressed.  . . .  The jurisdictional allegations on page 1 apply in both [actions].

Docket No. 12 at 10 (brackets added). The clerk was directed to open a new action (i.e., this action, Case No. 17-cv-6587 SI), and to file a copy of the third amended complaint as the first document in the new action. *Id.*

It is now time to review the claims in the third amended complaint (Docket No. 1) in this action. (The claims at pages 9:13 through 14:22 and the requests for relief at pages 43-45 that relate to those claims are stricken from the third amended complaint in this action (i.e., Case No. 17-cv-6587 SI) and will not be discussed further.)

B.     Claims About Torres' First Trial For Assault (Pages 14-45 of Third Amended Complaint)

Torres was accused of assaulting Rick Hendricks on November 28, 2012. Following a trial in Contra Costa County Superior Court, Torres was convicted and received a six-year prison sentence for assault by means of force likely to produce great bodily injury and battery on Rick Hendricks. *See* Docket No. 1-1 (*People v. Torres*, Cal. Ct. App. Case No. A139734, 12/17/14 opinion at 1, 2). On December 17, 2014, the conviction was overturned on appeal, and the case was remanded "for retrial or other proceedings consistent with this opinion." *Torres,* slip opinion at 14. The conviction was reversed because of the cumulative effect of the erroneous admission of hearsay evidence relating to an uncharged assault by Torres upon his girlfriend, failure to give a limiting instruction, and allowance of a cross-examination of the defendant that went far beyond impeachment. *Torres,* slip opinion at 13.

After the reversal, the prosecution decided to retry Torres for the assault on Rick Hendricks. Torres eventually agreed to a plea bargain and entered a guilty plea covering several cases pending against him, including convictions for battery causing great bodily injury and assault by force likely to cause great bodily injury to Rick Hendricks. *See* Docket No. 11 at 13-20 in Case No. 16-cv-6607 SI.[1]

The third amended complaint concerns the first assault trial, and alleges the following:

---

[1] The order of dismissal with partial leave to amend (Docket No. 12 at 9-11) in Case No. 16-cv-6607 SI, explained why the rule from *Heck v. Humphrey*, 512 U.S. 477 (1994), does not require dismissal of claims about the first trial, despite these later convictions.

Two Contra Costa County public defenders provided inadequate representation in that case (Docket No. 1 at 15-35); two probation officers made false statements in a probation report (*id.* at 27-29); the Office of the Contra Costa County Public Defender failed to properly hire, train, and supervise public defenders, and covered up wrongdoings (*id.* at 36-37); four court reporters prepared incorrect transcripts during the pretrial hearings and at trial (*id.* at 37-39); Contra Costa County has policies or customs that led to the misdeeds mentioned in this paragraph (*id.* at 40-41); and the State of California owes Torres damages for everything alleged in the third amended complaint (*id.* at 43).

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

As will be seen below, state law claims predominate in this action. Although state law claims predominate, the cognizable § 1983 claims that do exist give the court federal question jurisdiction over the action, and Torres has invoked the federal court's supplemental jurisdiction over his state law claims. *See* Docket No. 1 at 1.

United States District Court
Northern District of California

A.    Public Defenders

Torres has named as defendants two public defenders, Natalie Saba and Robin Lipetzky, who were "assigned to represent [Torres] in his criminal proceedings." Docket No. 1 at 2, 14. Saba, under the supervision of Lipetzky, allegedly failed to adequately represent Torres in the criminal proceedings that led to his conviction for assaulting Hendricks. Docket No. 1 at 14-35. While supervised by Lipetzky, Saba allegedly failed to provide Torres with discovery, failed to adequately cross-examine witnesses against Torres, failed to file motions Torres wanted filed, participated in hearings during trial without Torres being present, failed to object to some objectionable evidence, refused to investigate Torres' defense, and recommended that Torres accept a plea bargain. *See id.* at 31-32. Lipetzky was made aware of Saba's shortcomings. *Id.* at 32. Saba and Lipetzky negligently and intentionally failed to perform their duties as public defenders. *Id.* at 35.

State court criminal defendants cannot sue their lawyers in federal court under 42 U.S.C. § 1983 for most lawyer-type mistakes. A public defender does not act under color of state law, an essential element of a claim under § 1983, when performing a lawyer's traditional functions, such as entering pleas, making motions, objecting at trial, cross-examining witnesses, and making closing arguments. *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981).

Torres alleges in conclusory fashion that his public defenders conspired with the prosecutor and judges. Conclusory allegations of a conspiracy unsupported by material facts are insufficient to state a claim against any of the alleged conspirators. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). A conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). Torres' conclusory allegations that the public defenders conspired with the prosecutor and judges are insufficient to turn them into state actors or otherwise hold them liable under § 1983. The court had previously cautioned Torres that conclusory allegations were insufficient to state conspiracy-based liability. *See* Docket No. 12 at 11 in Case No. 16-cv-6607 SI. Further leave to

1  amend will not be granted because it would be futile: Torres was either unwilling or unable to

2  allege anything but conclusions about purported conspiracies.

3       The third amended complaint fails to state a claim under § 1983 against Saba or Lipetzky

4  because neither was a state actor in doing the acts and omissions alleged in the third amended

5  complaint. When they did their alleged misdeeds in representing Torres, Saba and Lipetzky were

6  performing a lawyer's traditional functions, and therefore were not acting under color of state law.

7  The § 1983 claims against them for their representation of Torres are dismissed. (But see the next

8  section regarding the Office of the Public Defender, and Robin Lipetzky's role in it.)

9       Torres also alleges that Saba and Lipetzky performed their duties negligently and did their

10  misdeeds with the intent to cause harm to him. *See* Docket No. 18 at 35. The defendants must

11  respond to the state law claims.

12

13  B.   Contra Costa County Office Of The Public Defender

14       Torres alleges that the Contra Costa County Office of the Public Defender had a policy not

15  to allow criminal defendants to see discovery in their criminal cases. Docket No. 1 at 31, 34. He

16  further alleges that the Office of the Public Defender failed to properly hire, train and supervise its

17  employees. *Id.* at 37). He further alleges that the Office of the Public Defender "use[d]

18  promot[ed] and tolerat[ed] negligence constitutional violations, deliberate indifference, fraud

19  malpractice, the intentional infliction of injuries" by its public defenders; promoted and tolerated

20  improper procedures for investigating public defender misconduct; and "failed to implement

21  procedural safeguards to prevent malpractice, negligence, intentional injuries and constitutional

22  violations." *Id.* at 36-37 (errors in source). (Although not alleged in the third amended

23  complaint, the Contra Costa County Office of the Public Defender's website currently lists Robin

24  Lipetzky as *the* Contra Costa County Public Defender.)

25       Although not a state actor when doing traditional lawyer functions, a public defender may

26  be a state actor and liable under § 1983 for "administrative and possibly investigative functions,"

27  as well as "making hiring and firing decision on behalf of the State." *Polk County*, 454 U.S. at

28  325. The head of a county public defender's office, as the administrative head of an organization

formed to represent criminal defendants, may be held accountable under § 1983 for a policy that leads to a denial of an individual's right to effective representation of counsel. *Miranda v. Clark County, Nevada*, 319 F.3d 465, 468-71 (9th Cir. 2003) (en banc) (plaintiff complained of policy of administering lie detector test to all defendants and allocating minimal resources for preparation of defense to those clients who appear guilty because they failed the polygraph, and of policy to assign the least-experienced lawyers on staff to capital cases without training or experience in the special demands of such cases).

Liberally construed, the third amended complaint states a cognizable claim against the Contra Costa County Office of the Public Defender for promulgating and enforcing a policy that criminal defendants are not allowed to see the discovery in their cases. Liberally construed, the third amended complaint also states a cognizable claim against Contra Costa County Office of the Public Defender based on the allegedly deficient efforts at hiring, training and supervising that have allegedly caused the violations of Torres' constitutional rights. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978); *Miranda*, 319 F.3d at 468-71.

The third amended complaint appears to allege that the Contra Costa County Office of the Public Defender was negligent and intentionally disregarded the needs of the criminal defendants in its operations. *See* Docket No. 1 at 36. Liberally construed, the allegations suffice to state cognizable claims for negligence and intentional torts under state law. The defendant must respond to the state law claims.

C.    Probation Officers

Torres alleges that probation officer Joe Battle interviewed him on or about August 16, 2013, to prepare a probation officer's report (also referred to as a pre-sentencing report) for the court. Docket No. 1 at 27. David Henley, who was Battles' unit supervisor, "read, agreed with and signed off on Battles'" report. *Id.* at 29. Torres alleges that the report was false because Torres had never "been convicted, let alone charged with the crimes specified in" the report. *Id.* Battles allegedly produced the "fraudulent probation report to illegally incarcerate plaintiff, and to protect the defendants" for their alleged misdeeds in the criminal proceedings. *Id.* at 29.

6

The probation officer's report is attached to the third amended complaint. *See* Docket No. 1-10. The report stated that Torres "has an open case that includes" numerous listed crimes, and that "the following information has been taken from the pre-plea report . . . to help the court better understand the defendant's pattern of violent behavior." *Id.* at 13. The report then described the details of the twelve counts pending against Torres. *Id.* at 13-21. The report further stated: "Probation acknowledges that the defendant has no prior criminal convictions. However, we find that the defendant's prior violent behavior can not be ignored. The defendant's prior behavior of assaulting family members, his pregnant girlfriend and the police indicates that he [poses] a danger to society." *Id.* at 22.

Torres' assertion that the report was false because he did not have the criminal background described in the report is contradicted by other allegations in the third amended complaint and attachments thereto. First, although Torres alleges that he was never charged with any crimes, elsewhere in the complaint he describes his encounter with police that led to him being charged with assaulting police officers. Docket No. 1 at 11-13. His preliminary hearing for that case allegedly took place on June 25, 2013, two months before the probation officer's report was prepared. *See id.* at 11. Second, the California Court of Appeal's opinion reversing the original conviction (and attached as an exhibit to the third amended complaint) discusses evidence admitted at trial that Torres beat his girlfriend on multiple occasions. *See* Docket No. 1-1 at 6-8, 14. Defense counsel even offered to stipulate that Torres had been arrested twice for domestic violence. *Id.* at 6. Moreover, in an earlier pleading, Torres listed numerous cases pending against him that were resolved in his later plea deal. *See* Docket No. 11 at 13-20 in Case No. 16-cv-6607 SI. In sum, Torres had a history of reported criminal conduct, even if he had not yet acquired a conviction.

The third amended complaint fails to state a § 1983 claim against Battles or Henley. Probation officers possess absolute judicial immunity from damage suits under § 1983 for preparing presentencing reports for state court judges. *See Polk v. Holtus*, 599 F. App'x 797, 798 (9th Cir. 2015); *Puentes v. County of San Mateo*, 481 F. App'x 348, 349 (9th Cir. 2012); (district court properly granted summary judgment for six probation officers); *Demoran v. Witt*, 781 F.2d

155, 158 (9th Cir. 1986) ("[P]robation officers preparing presentencing reports for state court judges are entitled to absolute judicial immunity from personal damages actions brought under section 1983").

Even if Battles and Henley did not have absolute immunity against the § 1983 claims, the claims against them must be dismissed for the separate reason that the allegations do not state a plausible § 1983 claim. The probation officers' report plainly states that Torres had no prior criminal convictions and purports only to describe information "taken from the pre-plea report" in another pending case. Docket No. 1-10 at 12. Torres may disagree that he engaged in the violence described in the probation officer's report, but he fails to plausibly allege that the probation officer knowingly or even negligently misstated information about Torres' history of violence that was contained in the pre-plea report from the other pending case. For the same reasons, the third amended complaint fails to plausibly allege a claim for state law negligence or an intentional tort against probation officer Battles or his supervisor, Henley. Defendants Battles and Henley, and claims related to the preparation of the probation report, are dismissed.

D. Court Reporters

Torres names as defendants four court reporters who reported Torres' criminal proceedings in Contra Costa County Superior Court: Monica Popper, Debbie Keys, Billie Jean Enea, and Michelle Rebollini.

Monica Poppers reported a preliminary hearing held on or about June 25, 2013. Docket No. 1 at 19. Torres alleges that witness Zierke's "admissions of intoxication have been removed from the transcripts, were not recorded into the transcripts." *Id.* at 20; *see also id.* at 37. He further alleges that the transcript for the hearing altered a statement by the judge: Judge Stark allegedly stated to Torres, "'No you may not say something, you're appalling!' (The transcripts read Starks response as just 'no')." *Id.* (errors in source)*; see also id.* at 39.

Debbie Keys reported a pretrial hearing on or about August 5, 2013. *Id.* at 22. At the hearing, Torres allegedly argued with Judge Mills. *Id.* at 22. The "transcripts are incorrect. The argument [sic] plaintiff had with Mills about the legality of his trial now read [sic] 'inaudible

discussion.'" *Id.* at 23. Torres further alleges that he "has been completely removed from his pretrial transcripts, or he was never recorded in them to begin with (alleging)." *Id.* (errors in source)*; see also id.* at 39.

Jean B. Enea reported trial proceedings on or about August 5, 2013. Docket No. 1 at 23. Torres alleges that, while Hendricks was on the witness stand, either the prosecutor or the public defender "asked if Hendricks was alright, but it was asked and its [sic] not in the trial transcripts." *Id.* at 24. Torres further alleges that Judge "Mills gives plaintiff a presumption of guilt during jury instruction (allegedly). [¶] Mills states to the jury, 'we already know what the verdict is going to be, this should not take long. It's a Friday and a holiday weekend, lets get this wrapped up.'" *Id.* at 26 (errors in source). This statement was not reported in the transcripts. *Id.*; *see also id.* at 39.

Michelle Rebollini reported the sentencing hearing held on or about September 3, 2013. Docket No. 1 at 29. At that hearing, the prosecutor stated that Torres had "six Marsden motions in judge Clare Maiers courtroom alone!" but the transcript "reads 'I believe there's been three.'" *Id.* at 30. Torres further "alleges that the sentencing transcripts are fraudulent and plaintiff has been removed from them as he has been removed from all transcripts pertaining to his criminal case/conviction." *Id.; see also id.* at 39.

The innocent or negligent failure to provide an accurate transcript does not state a claim under § 1983. *See Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir. 1993) (criminal defendants do not have a constitutional right to a totally accurate transcript of their court proceedings); *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006) (court reporters are not liable under § 1983 for innocent or negligent errors).

Torres claims that the court reporters produced "fraudulent, fabricated, court transcripts" in violation of his right to due process. Docket No. 1 at 39. "[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (termination of a government worker). If there is a constitutionally protected interest, "'the question remains what process is due,'" and the answer to that question is found in federal constitutional principles rather than state law. *See id.* at 541-42. Torres has not alleged facts

9

showing that he had any protected property interests in the transcripts for which he (as an indigent defendant represented by the public defender) presumably did not pay. Perhaps a liberty interest would be implicated by one who loses his liberty due to problems with a transcript. However, Torres' pleading shows that he did not lose his liberty due to inaccurate transcripts: the appellate court reversed the conviction and remanded the case to the trial court. Torres has failed to identify a constitutionally protected interest of which he was deprived due to the allegedly inaccurate transcripts, and therefore fails to state a claim for a due process violation. The § 1983 claims against the court reporters are dismissed because Torres has not identified a constitutionally protected interest of which he was deprived.

Torres also claims that the court reporters falsified the transcripts "because of plaintiff's race in violation of the equal protection clause[s] of the Fifth and Fourteenth Amendments of the U.S. Constitution." Docket No. 1 at 39. "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted). Even with liberal construction, the third amended complaint does not state a claim for a violation of Torres' right to equal protection because no *facts* are alleges to suggest that the defendants acted with a discriminatory purpose and that their actions had a discriminatory effect. The equal protection claim is dismissed.

Torres also alleges several state law claims. He alleges that the court reporters produced the incorrect transcripts through negligence and "intentionally causing injuries to plaintiff with their acts of fraud, defamation, abuse of power/process, infliction of emotional distress and injuries, illegal incarceration etc. and are guilty of malice, fraud and oppression as defined in Civil Code section 3294." Docket No. 1 at 39. The defendants must respond to the state law claims alleged in the third amended complaint.

E.    Contra Costa County

Torres names Contra Costa County as a defendant.  He alleges, among other things, that the County's "policies or custom of hiring training and supervising its employees were the cause of plaintiff's constitutional violations" alleged in the third amended complaint "and that the customs or policies were so grossly inadequate that they amount to deliberate indifference of those rights to the plaintiff and public."  *Id.* at 40 (errors in source).  Torres also alleges that Contra Costa County has a custom or policy of not letting criminal defendants see discovery in their cases.  See Docket No. 18 at 30, 31, 34.

The complaint adequately alleges claims under *Monell,* 436 U.S. 658, against Contra Costa County.   The County's allegedly deficient efforts at hiring, training and supervising allegedly have caused the violations of Torres' constitutional rights.   The County's alleged policy of depriving criminal defendants of access to the discovery in their cases also allegedly interferes with Torres' right to due process and his Sixth Amendment rights.

Torres also alleges that Contra Costa County is liable for the misdeeds at the Concord Police Department.  The claim based on allegations that Contra Costa County is responsible for alleged misdeeds at the Concord Police Department is dismissed because no facts are alleged showing that Contra Costa County has any control over the Concord Police Department, or that the county and the city are anything other than two separate municipal entities.   A local government does not cause the alleged violation, and therefore is not liable under § 1983, if it does not have the power to remedy the alleged violation.  *See Estate of Brooks v. United States*, 197 F.3d 1245, 1248-49 (9th Cir. 1999) (upholding dismissal of § 1983 excessive detention claim against county because under state statute county did not have power either to release federal detainee or bring him before federal judge).

F.    State Of California

The State of California is dismissed because it has Eleventh Amendment immunity from Torres' claims.  *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985).

**CONCLUSION**

1.      Liberally construed, the third amended complaint states cognizable claims against the following defendants: Natalie Saba, Robin Lipetzky, Contra Costa County Office of the Public Defender, Monica Popper, Debbie Keys, Billie Jean Enea, Michelle Rebollini, and Contra Costa County.  All other defendants are dismissed.

2.      The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the third amended complaint, and a copy of all orders in this file upon the following defendants:

- Natalie Saba (Contra Costa County Office of the Public Defender)

- Robin Lipetzky (Contra Costa County Office of the Public Defender)

- Contra Costa County Office of the Public Defender

- Monica Popper (a court reporter at Contra Costa County Superior Court)

- Debbie Keys (a court reporter at Contra Costa County Superior Court)

- Billie Jean Enea (a court reporter at Contra Costa County Superior Court)

- Michelle Rebollini (a court reporter at Contra Costa County Superior Court)

- Contra Costa County

3.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.      No later than **June 29, 2018**, defendants must file and serve a motion for summary judgment or other dispositive motion.  If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due.  If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion.  *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **July 27, 2018**.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.     If defendants wish to file a reply brief, the reply brief must be filed and served no later than **August 10, 2018.**

4.     Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed.  As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5.     All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel.  The court may disregard any document which a party files but fails to send a copy of to his opponent.  Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7.     Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the

court informed of any change of address and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8.      Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

9.      Due to a clerical error at the court, summonses were issued with the case number for this case for the several defendants who are only defendants in Case No. 16-cv-6607 SI.  To clarify: summonses should not have been issued in this case (i.e., Case No. 17-cv-6587 SI) for Officer Mike Hansen, officer Daniel Smith, and the Concord Police Department, and they need not respond to the summons or third amended complaint in this case (i.e., Case No. 17-cv-6587 SI).

**IT IS SO ORDERED**.

Dated:  April 2, 2018

_____
SUSAN ILLSTON
United States District Judge