UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIO TORRES,

Plaintiff,

v.

NATALIE SABA, et al.,

Defendants.

Case No. 17-cv-06587-SI

**ORDER OF DISMISSAL**

Re: Dkt. Nos. 16, 18, 33, 47

Mario Torres, a California inmate, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Two groups of defendants have moved to dismiss, and plaintiff has filed an opposition to one of the motions to dismiss. For the reasons discussed below, the court will dismiss without leave to amend the § 1983 claims that gave this court federal question jurisdiction, will decline to exercise supplemental jurisdiction, and will dismiss the rest of the action without prejudice to Torres filing an action in state court to assert his state law claims.

**BACKGROUND**

A. Factual Background

The following information is found in the third amended complaint and other documents filed by Torres.

On July 4, 2012, Concord police officers Mike Hansen and Daniel Smith allegedly went to Torres' home in response to a call about an argument Torres had with his girlfriend. The officers allegedly wanted to enter the residence, and Torres wanted to see a warrant. Officer Hansen then allegedly became angry and told Torres, "'[i]t's the law'" that he had to let the officers into the residence. Docket No. 1 at 10. Torres allegedly allowed them to enter the residence. Allegedly,

1  once in the residence, officers Hansen and Smith beat Torres with batons, handcuffed him, and
2  Hansen beat him again. Eventually, the officers allegedly transported Torres to the Concord police
3  station and beat him again before putting him in a holding cell.

4  In a separate matter, Torres was arrested and tried for a November 28, 2012, assault on Rick Hendricks. Following a trial in Contra Costa County Superior Court, Torres was convicted and received a six-year prison sentence for assault by means of force likely to produce great bodily injury and battery on Hendricks. *See* Docket No. 1-1 (*People v. Torres*, slip op. at 1, 2 (Cal. Ct. App. Dec. 17, 2014). Torres testified at trial that he had hit Hendricks in self-defense. *Torres*, slip op. at 4. On December 17, 2014, the conviction was overturned on appeal and the case was remanded "for retrial or other proceedings consistent with this opinion." *Torres,* slip op. at 14; *see* Docket No. 18 at 5. The conviction was reversed because of the cumulative effect of the erroneous admission of hearsay evidence relating to an uncharged assault by Torres upon his girlfriend, failure to give a limiting instruction, and allowance of a cross-examination of the defendant that went far beyond impeachment. *Torres,* slip op. at 13. After the reversal, the prosecution decided to retry Torres for the assault on Rick Hendricks. Torres eventually agreed to a plea bargain and entered a guilty plea covering several cases pending against him, including convictions for battery causing great bodily injury and assault by force likely to cause great bodily injury on Hendricks. *See* Docket No. 1-2 at 45-48; Docket No. 1-3 at 24-27.

B.  Procedural History

This action began when Torres filed a civil rights complaint asserting claims against numerous defendants for alleged misdeeds during his July 4, 2012, arrest and for alleged misdeeds during the criminal cases filed against him. *See Torres v. Saba*, No. 16-cv-6607 SI. His third amended complaint in that action had two segments: claims about his arrest on July 4, 2012, and claims about Torres' trial for the assault on Rick Hendricks that he committed four months later. This court eventually determined that the claims against the defendants in the second segment were not properly joined with the claims against the defendants in the first segment and severed them. *See* Docket No. 21 in Case No. 16-cv-6607 SI.

2

By the time the severance was ordered, Torres was on his third amended complaint after several efforts to cure pleading deficiencies. Because Torres had struggled to file an adequate pleading, *see* Docket No. 12 at 2 in Case No. 16-cv-6607 SI, when it came time to sever the action, the court determined that it was preferable to simply use the third amended complaint as the operative pleading in both actions rather than make him file a new pleading in the new action limited to just claims about his trial. The court explained which parts of the third amended complaint applied in each action:

> The claims against the Concord Police Department and its members arising out of events and omissions on July 4, 2012 will proceed in [Case No. 16-cv-6607 SI]. All other claims and defendants will be severed because they are not properly joined with the foregoing claims. That is, the claims and requests for relief alleged at pages 15-45 of the third amended complaint will be severed and filed as a new action [i.e., Case No. 17-cv-6587 SI], where they will be addressed. . . . The jurisdictional allegations on page 1 apply in both [actions].

Docket No. 12 at 10 in Case No. 16-cv-6607 SI.

Some of the rulings made in Case No. 16-cv-6607 SI before the severance have a bearing on the claims and defendants in the present case. For example, the order at Docket No. 12 in Case No. 16-cv-6607 SI explained why the rule from *Heck v. Humphrey*, 512 U.S. 477 (1994), did not require dismissal of the claims about the trial for the assault on Hendricks despite Torres' later conviction pursuant to the post-reversal guilty plea. In order to make the record clearer for any future review, the court now incorporates those rulings as applying in the present action. Specifically, the court incorporates: (a) all of the January 10, 2017, order for amendment to complaint; (b) pages 5:1 to 11:20 and pages 13:12 to 16:28 of the July 7, 2017, order of dismissal with partial leave to amend; and (c) pages 3:22 to 6:18 and pages 9:15 to 10:15 of the November 14, 2017, order of service and partial severance. *See* Docket Nos. 4, 12, and 21 in Case No. 16-cv-6607 SI.

C. <u>Claims About Torres' Trial for Assault (Pages 14-45 of Third Amended Complaint)</u>

The third amended complaint alleges the following about the trial for the assault on Rick Hendricks: Two Contra Costa County public defenders provided inadequate representation in the criminal case (Docket No. 1 at 15-35); two probation officers made false statements in a probation report (*id.* at 27-29); the Office of the Contra Costa County Public Defender failed to properly hire,

3

train, and supervise public defenders, and covered up wrongdoings (*id.* at 36-37); four court reporters prepared incorrect transcripts during the pretrial hearings and at trial (*id.* at 37-39); Contra Costa County has policies or customs that led to the misdeeds mentioned in this paragraph (*id.* at 40-41); and the State of California owes Torres damages for everything alleged in the third amended complaint (*id.* at 43).

The court reviewed the third amended complaint, and dismissed some claims and found some other claims cognizable. See Docket No. 7. The federal question claims that the court found cognizable were the following: (a) a § 1983 claim against the Contra Costa County Office of the Public Defender and Contra Costa County for "promulgating and enforcing a policy that criminal defendants are not allowed to see the discovery in their cases," Docket No. 7 at 6, 11; and (b) a § 1983 claim under *Monell* against the Contra Costa County Office of the Public Defender and Contra Costa County for their deficient efforts at hiring, training and supervising that allegedly caused the violations of Torres' constitutional rights, Docket No. 7 at 6, 11. The court also found several state law claims cognizable, including: (a) state law claims against the Contra Costa County Office of the Public Defender for negligence and intentional torts, *id.* at 6; (b) state law claims against public defenders Saba and Lipetzky for their work on Torres' defense, *id.* at 4-5; and (c) state law claims against four court reporters for producing inaccurate transcripts during state court proceedings, *id.* at 10. As noted in the order of service, there were § 1983 claims that gave the court federal question jurisdiction but state law claims predominate in this action. *Id.* at 3.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010). The court need not

4

1 accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable
2 inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended,* 275 F.3d 1187
3 (9th Cir. 2001). In considering a motion to dismiss, the court may take judicial notice of matters of
4 public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th
5 Cir. 1986).

**DISCUSSION**

A. Section 1983 Claim Based on The Discovery Policy

The order of service stated that, liberally construed, the third amended complaint stated a cognizable claim against the Contra Costa County Office of the Public Defender and Contra Costa County for promulgating and enforcing a policy that criminal defendants are not allowed to see the discovery in their cases. *See* Docket No. 7 at 6, 11. Those defendants move to dismiss the claim, arguing that it fails as a matter of law. Torres opposes the motion.

Defendants first argue that the court construed the policy too broadly in the order of service. The court agrees. Although the order of service described the claim to be a claim that that there was a policy that denied criminal defendants the right *to see* the discovery materials, the claim should be, and now is, construed to be a claim that there was a policy that denied criminal defendants the right to be provided *photocopies* of the discovery materials. Torres does at some places in his third amended complaint allege that incarcerated criminal defendants were not allowed *any* access to the discovery in their cases. *See, e.g.,* Docket No. 1 at 30 (public defenders "denied plaintiff all discovery pursuant to Contra Costa County policy"); 33 (public defenders violated plaintiff's rights "by denying plaintiff all discovery"); 34 (referring to "a Contra Costa County policy denying criminal defendants discovery"); *id.* ("denying plaintiff all discovery"). However, he also alleges facts plainly showing that his public defender did allow him to look at the discovery in his case, albeit for a shorter time than he wished. *See* Docket No. 1 at 16 (Torres was allowed to look at discovery), 18 (Torres was allowed to quickly go over the police report at the preliminary hearing). Elsewhere in his third amended complaint, Torres makes clear that the dispute is about whether he could have photocopies of his discovery. He alleges that, at the next visit after he reviewed the

5

discovery in his case with his public defender, he asked for photocopies of his discovery and the public defender responded that "'[i]t's against Contra Costa County policy to allow inmates any of their discovery.'" *Id.* at 16. When he protested, the public defender allegedly said, "'it's unsafe for you to have your discovery,'" and refused to give him photocopies of the discovery. *Id.* at 17. Torres complained about the failure to give him photocopies of his discovery at several *Marsden* hearings as he attempted to discharge his counsel, and the superior court told him he had no right to the discovery. *See id.* at 17, 18, 22. Given these factual allegations made under penalty of perjury – that Torres saw the discovery but was not allowed photocopies of the discovery -- the claim cannot properly be construed to be one of complete denial of any access to the discovery. The policy at issue thus is construed to be an alleged policy not to provide criminal defendants photocopies of the discovery in their criminal cases.

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'" *Faretta v. California*, 422 U.S. 806, 819 (1975). In other words, the Sixth Amendment ensures a criminal defendant's right to participate in his defense. *See United States v. Mouzin*, 785 F.2d 682, 701 (9th Cir. 1986) (Ferguson, J., dissenting). The Sixth Amendment also gives a criminal defendant the right to effective assistance of counsel. Stating these general Sixth Amendment principles does not answer the question whether the Sixth Amendment encompasses a right to photocopies of discovery in one's criminal case. *Cf. Miranda v. Clark County*, 319 F.3d 465, 470 (9th Cir. 2003) (in examining plaintiff's claim based on alleged policy under which criminal defendants were subjected to a polygraph test to determine how Public Defender would allocate resources, the court had to determine "whether the alleged policy resulted in deprivation of the plaintiff's constitutional rights to effective representation of counsel.")

Defendants contend that a policy not to provide criminal defendants photocopies of the discovery in their criminal cases does not violate any constitutional right. The court agrees. Neither party has identified a case squarely addressing whether or not a denial of photocopies violates a

6

constitutional right. The few authorities identified by the parties and located by the court support the view that there is no such right.

Defendants identify two cases that they contend support their argument that there is no right of a defendant to have photocopies of discovery. In *People v. Taylor,* 48 Cal. 4th 574 (Cal. 2010), a capital defendant filed multiple motions under *People v. Marsden*, 2 Cal. 3d 118 (Cal. 1970), trying to discharge his appointed attorney. A defendant is entitled to relief in a *Marsden* hearing if the record clearly shows that the appointed counsel is not providing adequate representation or that there is such an irreconcilable conflict that ineffective representation is likely to result. *Taylor*, 48 Cal. 4th at 599. At one of the *Marsden* hearings, the *Taylor* defendant complained that counsel would not accede to his requests; counsel "explained that she refused to give defendant a copy of the police report in his case because she feared it might fall into the hands of another inmate who would use it to testify falsely against defendant." *Taylor*, 48 Cal. 4th at 598. The California Supreme Court determined that the trial court had not abused its discretion in denying the *Marsden* motions. *Id.* at 599-600. Relief under *Marsden* was not appropriate based on counsel's failure to provide a copy of the police report to the incarcerated defendant because "the trial court reasonably could find that counsel had properly refused to provide defendant with the police reports in his case because of concern the documents would fall into the hands of a would-be jailhouse informant who might use the police reports to fabricate evidence against defendant." *Id.* at 600. The second case identified by defendants to show the nonexistence of a right of a defendant to have photocopies of discovery involves facts similar to those in *Taylor*, i.e., the reviewing court rejected a Sixth Amendment claim based on the denial of *Marsden* motions in which the incarcerated defendant had complained about, among other things, counsel's repeated refusal to give him photocopies of discovery materials. *See Robbins v. Smith*, 2006 WL 8427274, *11, *13 (C.D. Cal. 2006). The *Taylor* and *Robbins* cases indirectly support the proposition that the refusal to provide photocopies to an incarcerated defendant does not amount to a violation of that defendant's Sixth Amendment right to counsel.

In his opposition, Torres cites to several cases that discuss a right to pretrial discovery. *See* Docket No. 34 at 11, 15. Torres' cases all concern the defense's ability to obtain discovery from

7

the prosecution or third parties, rather than the criminal defendant's right to obtain discovery from his own defense attorney. *See* Docket No. 34 at 11 and 15 (citing *Brady v. Maryland*, 373 U.S. 83 (1963) (discussing prosecution's duty to disclose evidence to defense); *People v. Memro*, 38 Cal. 3d 658 (Cal. 1985), *overruled on other grounds by People v. Gaines*, 46 Cal. 4th 172 (Cal. 2009) (addressing defense request for *Pitchess*-type materials about police officers); *City of Alhambra v. Super. Ct.*, 205 Cal. App. 3d 1118, 1133 (Cal. Ct. App. 1988), *superseded by statute* (addressing defense efforts to obtain discovery of 12 homicide reports from another city); *Ballard v. Super. Ct.*, 64 Cal. 2d 159 (Cal. 1966), *superseded by statute* (addressing defense efforts to obtain recordings and other discovery from prosecution); *People v. Ainsworth*, 217 Cal. App. 3d 247 (Cal. Ct. App. 1990) (addressing post-judgment efforts by defense to obtain forensic evidence from government)). These cases are inapposite because they pertain to obtaining discovery from an opposing party (such as the prosecutor) or a third party rather than from one's own attorney. The cases provide no authority for the claimed right of a criminal defendant to obtain photocopies of the materials the defense has already received from the prosecutor or other sources.

Torres' efforts to extend the prosecution's duties under *Brady v. Maryland,* 373 U.S. 83 (1963), to defense counsel is unavailing. He has not identified a single case, nor has the court found one, where a court has determined (a) that defense counsel has an obligation under *Brady* to disclose materials to the defendant, or (b) that the prosecution has a duty under *Brady* to send to the defendant personally photocopies of the discovery materials that are turned over to defense counsel. Strongly suggesting no duty under *Brady* for the prosecution to send an extra set of photocopies to defendant personally is the general rule that service is to be made on defense counsel rather than on the defendant personally when a criminal defendant is represented by counsel. *See* Fed. R. Crim. P. 49(b) ("When these rules or a court order requires or permits service on a party represented by an attorney, service must be made on the attorney instead of the party, unless the court orders otherwise."); *cf. Magee v. Super. Ct.*, 34 Cal. App. 3d 201, 213 (Cal. Ct. App. 1973) (quoting *Board of Comm'rs v. Younger*, 29 Cal. 147, 149 (1865) ("'A party to an action may appear in his own proper person or by attorney, but he cannot do both. If he appears by attorney he must be heard through him, and it is indispensable to the decorum of the Court, and the due and orderly conduct

8

of a cause that such attorney shall have the management and control of the action and his acts go unquestioned by any one except the party whom he represents.'"). In sum, *Brady* and its progeny provide no basis for the claimed due process right of a criminal defendant to obtain photocopies of the discovery that has been provided to the defense.

The idea that there is a constitutional right to obtain photocopies of discovery from one's own attorney also is undermined by the fact that there are several specific statutory provisions prohibiting a criminal defendant from seeing some discovery. A provision in the California Penal Code specifically prohibits an attorney from disclosing to a criminal defendant certain information, such as the telephone number and address of victims and witnesses. *See* Cal. Penal Code § 1054.2; *see also id.* at § 1054.2(a)(3) (willful violation of the nondisclosure requirements is a misdemeanor); *id.* at § 1054.7 (disclosures otherwise required may be denied, restricted or deferred upon a showing of good cause, which "is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement"). And a federal statute prohibits the defendant (or defense counsel) from obtaining child pornography relevant to a prosecution, requiring instead that the material remain in the care, custody and control of either the government or the court. *See* 18 U.S.C. § 3509(m).

Torres alleges that he informed his public defender that he "has a right to know the cause and nature of his crime, the probable cause and justification in his incarceration." Docket No. 1 at 17. This appears to be an effort to invoke the criminal defendant's Sixth Amendment right to "be informed of the nature and cause of the accusation" against him. U.S. Const. amend VI. This Sixth Amendment provision pertains to the formal accusatory pleading rather than the handling of discovery in a criminal case. *See Gautt v. Lewis*, 489 F.3d 993, 1004 (9th Cir. 2007) ("it is 'clearly established' that a criminal defendant has a right, guaranteed by the Sixth Amendment and applied against the states through the Fourteenth Amendment, to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided"). The right to notice of charges mentioned in the Sixth Amendment does not confer a right to photocopies of discovery.

9

Torres argues that the policy deprived him of his Eighth Amendment right to be free from cruel and unusual punishment. The contention has no merit. *See generally Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979) (scrutiny under Eighth Amendment's Cruel and Unusual Punishments Clause applies to convicted persons but not pretrial detainees).

Torres argues that he only received 15 minutes to look at his case file and that 15 minutes of discovery "for criminal charges amounting to fifteen felonies and five strikes fall well below the accepted professional norm." Docket No. 34 at 12. This argument misses the mark because it pertains to the quality of representation by the individual public defender rather than the existence of a policy not to provide photocopies of discovery. The § 1983 claims against the individual public defenders for their representation of Torres already have been dismissed.

The court concludes that a criminal defendant has no federal constitutional right to photocopies of the discovery that has been provided to the defense in his criminal case. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Because the defendant has no federal constitutional right to photocopies of the discovery in his criminal case, the allegation that the Contra Costa County Public Defender and Contra Costa County had a policy not to provide copies of a criminal defendant's discovery to him fails to state a claim under § 1983. The claim must be dismissed. Leave to amend will not be granted because it would be futile: Torres has adequately described the policy that the court has now determined does not amount to a constitutional violation.

B. <u>Section 1983 Claim Based on Failure to Adequately Hire, Train, and Supervise</u>

The third amended complaint alleges that the Contra Costa County Office of the Public Defender's "policies or customs of hiring, training and supervising its employees were the cause of plaintiff's constitutional violations as described" in the statement of facts (i.e., 180+ paragraphs describing everything that allegedly went wrong in his trial for his November 2012 assault on Hendricks and his arrest on a different matter four months earlier), and that "the customs or policies

10

were so grossly inadequate that they amount to deliberate indifference of those rights to the plaintiff and public." Docket No. 1 at 37 (errors in source). He further alleges that "Contra Costa County" knew or should have known "that the public defender[']s office inadequate training program was likely to result in malpractice, conspiracies, intentional injuries, constitutional violations, etc. . . . because of a pattern of similar violations in the past." *Id.*

With regard to Contra Costa County, virtually identical sweeping language is used. The third amended complaint alleges that Contra Costa County's "policies or custom of hiring training and supervising its employees were the cause of plaintiffs constitutional violations" mentioned in the statement of facts (i.e., 180+ paragraphs describing his arrest on July 4, 2012, and everything that allegedly went wrong in his trial for the November 2012 assault on Hendricks) as well as all the claims pled against other defendants, "and that the customs or policies were so grossly inadequate that they amount to deliberate indifference of those rights to the plaintiff and public." *Id.* at 40 (errors in source). The third amended complaint further alleges that Contra Costa County knew or should have known "that the inadequate training programs of the . . . Office of the Public Defenders, et al., was likely to result in negligence, corruption, conspiracies, intentional injuries, and constitutional violations as described . . . because of a pattern of similar violations in the past." *Id.* at 40-41.

The order of service stated that, liberally construed, the third amended complaint states a cognizable *Monell* claim against the Contra Costa County Office of the Public Defender and Contra Costa County for their "allegedly deficient efforts at hiring, training and supervising that have allegedly caused the violations of Torres' constitutional rights." Docket No. 7 at 6; *see id.* at 11. These defendants move to dismiss the *Monell* claim, arguing that the allegations are mere conclusions unsupported by the factual allegations that are necessary to state a plausible claim. Torres opposes the motion.

Local government entities are "persons" subject to liability under § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, *see Board of County Comm'rs v. Brown*, 520

11

U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). It is not enough to allege simply that a policy, custom, or practice exists that caused the constitutional violations. A*E ex rel. Hernandez*, 666 F.3d at 636-37. The plaintiff must allege sufficient facts regarding the specific nature of the policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that plaintiff is entitled to relief. *See id.* at 637.

A "[f]ailure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.' *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir.1989)." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). A local government's liability under § 1983 is at "its most tenuous" when the *Monell* claim is based on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Miranda*, 319 F.3d at 475-76 (Kleinfeld, J., concurring and dissenting in part) (questioning whether failure-to-train theory of municipal liability sensibly applies to public defenders, given that lawyers are trained in law school).

The court agrees with defendants that the allegations in the third amended complaint fail to allege sufficient facts to state a plausible *Monell* claim based on a failure to properly hire, train, and supervise. The allegations are mere conclusions devoid of any factual support plausibly showing his entitlement to relief on the *Monell* claim. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

1  (second alteration in original) (citations omitted) (quoted in Docket No. 12 at 13 in Case No. 16-cv-6607 SI). Torres' allegations do not reach the level of facial plausibility for his claim that a failure to properly hire, train, and supervise caused the violations of his constitutional rights.

In his opposition to the motion to dismiss, Torres points to the discovery policy described in the preceding section and urges that this discovery policy shows that "[e]ither the public defenders are improperly trained, hired and supervised or the public defenders are sadistic, malicious and cruel." Docket No. 34 at 19. The court has determined that the discovery policy did not amount to a violation of Torres' constitutional rights. Without an underlying constitutional violation, the *Monell* claim fails as a matter of law. *See generally Monell*, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort"). The *Monell* claim based on the purported failure properly hire, train, and supervise related to the discovery policy is dismissed without leave to amend.

Torres also argues in his opposition that "[p]ublic defenders are trained lawyers who are bound by an oath and code of conduct. To . . . conduct themselves in a manner specified in plaintiff's [third amended complaint] and this opposition shows lawyers improperly trained, improperly hired and improperly supervised (See TAC paragraphs 1-307)." Docket No. 34 at 19. This argument, like the *Monell* allegations in the third amended complaint, is too generic and conclusory. In essence, the statements amount to an allegation that everything that happened to him was due to the failure to properly hire, train, and supervise by the County and the Public Defender's Office. There is the obvious problem of over-inclusiveness in that many of the allegations in paragraphs 1-307 have nothing to do with Contra Costa County or the Public Defender's Office and could not seriously be the basis for a *Monell* claim against either. For example, paragraphs 32-70 of the third amended complaint allege facts related to Torres' arrest by members of the City of Concord Police Department, which is an entirely different municipality, and paragraphs 24-30 of the third amended complaint are legal argument disputing this court's earlier application of the rule from *Heck v. Humphrey*, 512 U.S. 477 (1994). Torres' allegations that every bad thing was caused by a failure to adequately hire, train, and supervise are so generic that they become meaningless and do not amount to factual allegations that raise the right to relief on the *Monell* claim above the speculative

13

level. The Ninth Circuit found similarly generic allegations inadequate to support liability in *Dougherty*, 654 F.3d at 900-01.

> Here, Dougherty's *Monell* and supervisory liability claims lack any factual allegations that would separate them from the "formulaic recitation of a cause of action's elements" deemed insufficient by [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)]. Regarding the *Monell* claim, Dougherty alleged only that (1) "Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case[ ]" and (2) "Defendant CITY's polices and/or customs were the moving force and/or affirmative link behind the violation of the Plaintiff's constitutional rights and injury, damage and/or harm caused thereby." The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the "moving force" behind his constitutional deprivation. Regarding supervisory liability, Dougherty alleged only "negligent" hiring and training and pointed to no instances of deliberate indifference. Dougherty failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. Therefore, we affirm the district court's dismissal of these claims.

654 F.3d at 900-01.

The allegations of the third amended complaint fail to state a *Monell* claim against the Contra Costa County Office of the Public Defender or Contra Costa County. Torres' mere use of the phrase "hiring, training and supervising" as the source of myriad constitutional violations and other legal wrongs is insufficient to allege municipal liability. *See AE ex rel. Hernandez*, 666 F.3d at 637. Torres does not allege "enough facts to state a claim to relief that is plausible on its face" against the Contra Costa County Public Defender's Office or Contra Costa County. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570.

The *Monell* claim is dismissed for failure to state a claim. Leave to amend will not be granted because it would be futile. The court already explained to Torres what he needed to allege to state a claim, and he was unable to do so. *See* Docket No. 12 at 15 in Case No. 16-cv-6607 SI ("For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief."). Moreover, Torres' opposition indicates that he has no further facts to allege at this time. He does not elaborate on his theory of failure to properly hire, train, and supervise. To the contrary, he indicates that he cannot now allege any facts but *might* learn such facts and be able to plead them at some unspecified date in the future "once

14

1  plaintiff obtains the facts of this case through the discovery that has been deprived from plaintiff
since plaintiff's arrest on 4-3-13." Docket No. 34 at 3. He effectively concedes that he cannot now
amend to allege facts to state a plausible *Monell* claim. *Cf. Dougherty*, 654 F.3d at 901 (leave to
amend properly denied where plaintiff did not mention any fact in his briefing or argument that
would have cured the pleading deficiency, thus showing amendment would have been futile). For
these reasons, the *Monell* claim is dismissed without leave to amend.

C. Miscellaneous Arguments

Torres suggests in his opposition to the motion to dismiss that, following the initial reversal of his conviction, he did not suffer a conviction in Case No. 05-131090-3, the case in which he was convicted of assaulting Rick Hendricks. Docket No. 17 at 2, 4. He is wrong. The abstract of judgment filed on February 13, 2015 in that case plainly shows a conviction for assault and battery. *See* Docket No. 11-2 at 9-11 in Case No. 16-cv-6607 SI.[1] The "felony advisement of rights, waiver and plea form" for Torres' plea bargain lists Case No. 05-131090-3 as one of three cases covered by the plea bargain. Docket No. 11-2 at 13 in Case No. 16-cv-6607 SI. Torres has stated under penalty of perjury that he had pled guilty in that case as part of his plea bargain. Docket No. 11 at 19 in Case No. 16-cv-6007 SI.

Torres claims that he has "new found evidence" in the form of police reports about his arrest on July 4, 2012. Docket No. 34 at 20-23. His allegedly newly discovered evidence is irrelevant to the issues in this action because the events of July 4, 2012, are the subject of Case No. 16-cv-6607 SI rather than this action.

Defendants argue that the Contra Costa County Office of the Public Defender is not a proper defendant because it is a department of Contra Costa County. State law determines the capacity to

---

[1] In deciding a Rule 12(b)(6) motion to dismiss, the court may consider matters of which it takes judicial notice in addition to the pleadings. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of the following documents: (a) the abstract of judgment showing the existence of a conviction in Contra Costa Superior Court Case No. 05-131090-3; and (b) the court minutes showing that Torres was sentenced on February 5, 2015 in Case No. "5-131090-3," Docket No. 11-2 at 9-11 in Case No. 16-cv-6607 SI (abstract of judgment); Docket No. 19-1 (minutes).

sue or be sued for an entity such as the Contra Costa Office of the Public Defender. *See* Fed. R. Civ. P. 17(b)(3). Defendants have not cited to any state law that explains the Office of the Public Defender's legal status vis-à-vis Contra Costa County or discusses the Office of the Public Defender's capacity to sue or be sued. The cases defendants rely on (and the cases cited in those cases) indicate that some police departments and task forces are not separate legal entities that are capable of being sued, but that does not resolve the issue with regard to the particular Office of the Public Defender sued in this case. *See, e.g., Hervey v. Estes*, 65 F.3d 784, 791-92 (9th Cir. 1995) (narcotics enforcement team comprised of "several local, county, and state governmental entities" was an "intergovernmental association" rather than "a municipality or local governmental entity" and was "only subject to suit if the parties that created the [team] intended to create a separate legal entity"). Without information as to the legal relationship between the Contra Costa County Office of the Public Defender and Contra Costa County, this court cannot say at the Rule 12(b)(6) stage whether or not the Contra Costa County Office of the Public Defender is a separate legal entity capable of being sued. Because the court has determined that the third amended complaint does not state a claim against either the Contra Costa County Office of the Public Defender or Contra Costa County, the inability to rule on whether the former is a separate legal entity capable of being sued does not preclude granting the motion to dismiss.

D. The State Law Claims

The court has concluded that the § 1983 claims must be dismissed. Because the dismissal of those claims that gave the court federal question jurisdiction is without leave to amend, only state law claims remain. With the dismissal of the claims giving this court federal question jurisdiction, the court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3). As a result, many of the arguments presented in the motions to dismiss will not be reached and will be dismissed as moot.

This action will be dismissed without prejudice to Torres filing a new action in state court to pursue his state law claims. Torres should act swiftly to file an action in state court, if he wishes to pursue his state law claims, to avoid any potential statute of limitations issues.

## CONCLUSION

The claims under 42 U.S.C. § 1983 are DISMISSED for failure to state a claim. Having rejected the federal claims for relief that gave the Court federal question jurisdiction, the Court declines to exercise supplemental jurisdiction over any state law claim. *See* 28 U.S.C. § 1367(c)(3).

The motion to dismiss filed by the Public Defender defendants is GRANTED as to the § 1983 claims and DISMISSED as moot as to the state law claims. Docket No. 18. The motion to dismiss filed by the Court Reporter defendants is DISMISSED as moot because the court has declined to exercise supplemental jurisdiction over the state law claims. Docket No. 16. Torres' two requests for an extension of the deadline to oppose the Court Reporter defendants' motion to dismiss are DISMISSED as moot. Docket Nos. 33, 47.

This action is DISMISSED without prejudice to Torres filing a new action in state court to assert his state law claims.

The clerk shall close the file

**IT IS SO ORDERED**.

Dated: January 4, 2019

_____
SUSAN ILLSTON
United States District Judge